OPINION
{¶ 1} Defendant-appellant Calvin D. Jones appeals from his conviction and sentence for Possession of Cocaine. Jones contends that the State did not adduce evidence sufficient to support his conviction and that his conviction is against the weight of the evidence. He also contends that the trial court erred by quashing a subpoena he issued after he was convicted.
 {¶ 2} We conclude that there is evidence in the record upon which reasonable minds could find the offense proved beyond a reasonable doubt, and that Jones's conviction is not against the manifest weight of the evidence. With respect to Jones's contention that the trial court erred in quashing his postconviction subpoena, we first conclude that there is nothing in this record to portray the error claimed. Secondly, we conclude that even if the trial court did err in quashing Jones's post-conviction subpoena, the error is necessarily harmless, since it cannot have adversely impacted his preceding conviction, from which this appeal is taken.
 {¶ 3} The judgment of the trial court is affirmed.
 I {¶ 4} On April 9, 2003, Dayton Police officers Cayce Cantrell and Michael Baker were on routine patrol together when they were directed to respond to a "family disturbance." Upon arriving at the residence where the disturbance was allegedly occurring, Cantrell and Baker decided to arrest Jones on misdemeanor charges. The officers handcuffed Jones and performed a pat-down search. Jones was then placed in the back of the police cruiser. Jones was the first person placed into the cruiser during the officers' shift.
 {¶ 5} The officers took Jones to the Montgomery County Jail, where he was taken into the "intake room." The officers proceeded to search Jones and remove his personal effects. Officers Cantrell and Baker did not find any contraband on Jones at that time. Jones was then taken into another room where Corrections Officer Douglas Evans conducted a thorough search of Jones. During this search, Evans pulled all of the pockets on Jones's clothing inside out and found granules of what appeared to be cocaine in Jones's left front pants pocket. The substance was field-tested and determined to be cocaine.
 {¶ 6} Officers Cantrell and Baker then returned to their cruiser to conduct a search for contraband. They found a folded five dollar bill that contained a substance similar to the substance found in Jones's pocket. Upon testing, the substance in the bill was also determined to be cocaine. A forensic scientist at the Miami Valley Regional Crime Laboratory determined that the substance in the five dollar bill was 0.66 grams of cocaine.
 {¶ 7} Jones was indicted on one count of Possession of Cocaine. Following trial, a jury convicted him as charged. He was sentenced to community control and his driving privileges were suspended for a six-month period. From his conviction and sentence Jones appeals.
 II {¶ 8} Jones's First Assignment of Error is as follows:
 {¶ 9} "Appellant's conviction for possession of cocaine was against the manifest weight and sufficiency of the evidence."
 {¶ 10} Jones contends that the State failed to produce evidence sufficient to support his conviction. He further contends that his conviction is against the weight of the evidence. He argues that the evidence does not demonstrate that the cocaine found in the police cruiser was ever in his possession. His argument relies on the fact that the arresting officers failed to detect any cocaine on his person during their pat-down and on his claim that they left their cruiser unattended.
 {¶ 11} A sufficiency of the evidence argument challenges whether the State has presented adequate evidence on each element of the offense to allow the case to go to the jury or sustain the verdict as a matter of law. State v. Thompkins,78 Ohio St.3d 380, 1997-Ohio-52. The proper test to apply to such an inquiry is the one set forth in paragraph two of the syllabus of State v.Jenks (1991), 61 Ohio St.3d 259:
 {¶ 12} "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt."
 {¶ 13} In the case before us, Officers Cantrell and Baker testified that they conducted a contraband search of their cruiser prior to going out on patrol on the day of Jones's arrest. They testified that pre-patrol searches are a routine part of their job. They further testified that they found no contraband in the cruiser during the pre-patrol search. The officers also testified that whenever they leave their cruiser unattended they make certain to lock the doors to prevent any person from stealing the contents of the cruiser or any of their personal belongings. They specifically testified that the cruiser was locked while they were away from it to investigate the family disturbance. Cantrell and Baker further testified that their original pat-down of Jones was done to check for weapons. They testified that this search was performed quickly because Jones's family members were "upset, crying and yelling," and the officers wanted to quickly remove him from the scene.
 {¶ 14} Cantrell and Baker testified that when they arrived at the jail to book Jones, they parked the cruiser inside the jail garage sally port, which is not accessible by the general public. They testified that they locked the doors of their cruiser while they took Jones into the booking area. Cantrell and Baker testified that it is usual practice to lock cruisers even when in the jail's garage. The officers testified that they conducted another pat-down search of Jones and removed his personal effects. They did not invert any of his clothing pockets during either of their two searches.
 {¶ 15} Cantrell and Baker testified that no one had access to their cruiser from the time they conducted their initial contraband search of the cruiser until the time they conducted the second search of the vehicle.
 {¶ 16} Corrections officer, Evans, testified that when he was conducting his search of Jones, he placed his hand into Jones's pocket and felt the cocaine granules. He then turned the pocket out and emptied the contents into his gloved hand.
 {¶ 17} The State presented evidence confirming that the substance found in the five dollar bill was cocaine, and that it weighed 0.66 grams.
 {¶ 18} Although Jones argues that the officers left their cruiser unattended, and that someone else could have placed the cocaine in the vehicle, we note that the unrebutted evidence indicates that the cruiser was locked during any period that it was unattended. Therefore, we find this argument unpersuasive.
 {¶ 19} Jones also argues that the officers' failure to detect the cocaine during their initial pat-down militates against a finding that he was in possession of the five dollar bill and the cocaine. This argument also lacks merit. In State v. Brown
(Mar. 16, 2001), Montgomery App. No. 18293, we concluded that this type of argument is not convincing. Specifically, we noted:
 {¶ 20} "A `pat-down' is a cursory search of the subject's outer clothing. It is entirely possible that the Defendant had the ball of crack cocaine concealed on his person in such a way that the pat-down failed to reveal it. Then, while seated in the cruiser, and even though handcuffed, he could have retrieved and discarded the ball of crack cocaine onto the floor of the cruiser before he could be searched more thoroughly. The improbabilities of such concealments and contortions, while they exist, are diminished when the evidence is construed most strongly in the State's favor * * *".
 {¶ 21} In this case, we are not dealing with a "ball" of crack cocaine, but rather some granules of non-crack cocaine concealed in a five dollar bill. There is nothing to indicate that the officers should have found the cocaine during their initial pat-down of Jones. Indeed, the evidence indicates that they conducted a quick patdown merely in order to determine whether Jones had any weapons on him.
 {¶ 22} Viewing the testimony of the State's witnesses in a light most favorable to the prosecution, a reasonable trier of facts could find all of the elements of Possession of Cocaine proven beyond a reasonable doubt. Therefore, Jones's conviction is supported by legally sufficient evidence.
 {¶ 23} A weight of the evidence argument challenges the believability of the evidence, and asks which of the competing inferences suggested by the evidence is more believable or persuasive. State v. Hufnagle (Sept. 6, 1996), Montgomery App. No. 15562, unreported. The proper test to apply to that inquiry is the one set forth in State v. Martin (1983),20 Ohio App.3d 172, 175:
 {¶ 24} "The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered."
 {¶ 25} The credibility of the witnesses and the weight to be given to their testimony is a matter for the trier of facts, the trial court here, to resolve. State v. DeHass (1967),10 Ohio St.2d 230. In State v. Lawson (August 22, 1997), Montgomery App. No. 16288, we noted that "[b]ecause the factfinder . . . has the opportunity to see and hear the witnesses, the cautious exercise of the discretionary power of a court of appeals to find that a judgment is against the manifest weight of the evidence requires that substantial deference be extended to the factfinder's determinations of credibility. The decision whether, and to what extent, to credit the testimony of particular witnesses is within the peculiar competence of the factfinder, who has seen and heard the witness." Id., at p. 4.
 {¶ 26} Based upon the evidence as cited above, we conclude that a trier of fact could reasonably find that Jones committed the offense.
 {¶ 27} The First Assignment of Error is overruled.
 III {¶ 28} The Second Assignment of Error is as follows:
 {¶ 29} "The trial court erred in its decision and entry to sustain the state of ohio's motion to quash the subpoena."
 {¶ 30} Jones contends that the trial court erred by quashing a subpoena that he served upon Detective Rodney Sewell of the Dayton Police Department. The subpoena was served upon Sewell after Jones had been convicted and after the termination entry was filed.
 {¶ 31} The facts relevant to this argument are not a part of the record before us. However, Jones has attached documents to his appellate brief indicating that almost twenty days after Jones was convicted, he filed a subpoena seeking a copy of "any and all documents, records, reports or supplemental reports associated" with his case. He argues that he was entitled to the information sought by subpoena because he was informed that a supplemental report allegedly created by the Dayton Police Department supported his contentions that the events surrounding his arrest differed from those presented by the State during trial.
 {¶ 32} We decline to address this argument simply because it is not a part of the record before us. However, we also note that any error committed by the trial court in quashing the subpoena is harmless since it occurred after the judgment of conviction from which this appeal is taken. This matter would more appropriately be the subject of a petition for post-conviction relief.
 {¶ 33} The Second Assignment of Error is overruled.
 IV {¶ 34} Both of Jones's assignments of error having been overruled, the judgment of the trial court is affirmed.
Brogan and Grady, JJ., concur.